CHRISTEN, Circuit Judge,
dissenting:
Montana resident Gary Butler lost his eye in November of 2006 while loading a flatbed truck in Idaho. A cargo net made from bungee cord detached from a hook and recoiled; one end struck Butler and permanently blinded his right eye. About six months later, Butler received a call from an Intermountain Claims adjuster, Scott Hoffman, who said he was “strictly a neutral part/’ and invited Butler to meet with him at Hoffman’s Idaho office.
Hoffman and Butler met just one time in Idaho, but they had several telephone conversations in the following months. The adjuster eventually conveyed a $50,000 settlement offer to Butler in Montana and told Butler that it was “a very fair offer.” According to Butler, Hoffman said that if Butler wanted to pursue a lawsuit, it would be “tied up in foreign courts” because the net was manufactured in Canada. Butler ultimately accepted the offer from his home in Montana, and later executed the settlement agreement and received the settlement payment there.
Some time later, Butler sued North American and Intermountain. He alleged that the defendants made material misrepresentations during the settlement negoti *527 ations. Butler testified at his deposition that he initially trusted Hoffman but later came to believe that Hoffman had misrepresented: (1) the value of his eye injury; (2) that Hoffman was a neutral party; (3) that Butler could be drawn into foreign courts if he filed a personal injury action; and (4) that Butler caused the accident by using the net improperly.
Montana’s Choice of Law Rule
Federal courts sitting in diversity apply the forum state’s choice-of-law rules to determine the controlling substantive state law. Fields v. Legacy Health Sys., 413 F.3d 943, 1008 (9th Cir. 2005). Montana follows the Restatement (Second) of Conflict of Laws (Restatement), Phillips v. General Motors Corp., 298 Mont. 438, 995 P.2d 1002 (2000). For tort claims, Montana looks to the Restatement’s tort principles set out in section 145, together with any more specific rules that may apply. Id, Several of the general tort factors identified in section 145 overlap with section 148, which specifically addresses misrepresentation claims, but one signpost in section 145(1) is not to be missed: “The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, ivith respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.” This provision is critical because it makes clear that the choice-of-law analysis in this case must focus on the state with the most significant relationship to the negotiations between Butler, North American, and Intermoun-tain regarding the settlement of Butler’s potential personal injury and product liability claims. One of the mistakes that crept into the district court’s analysis was its shift from consideration of the negotiation and settlement of Butler’s injury-related claims as the relevant “occurrence,” to discussion of the injury-related claims themselves.
Restatement Section 148
Section 148 specifically applies to claims for pecuniary harm arising from reliance on misrepresentations, and its six factors weigh in favor of applying Montana law to Butler’s claims.
First, section 148(2)(a) requires consideration of the place of reliance. Butler was in Montana when he relied on Hoffman’s representations by accepting the $50,000 offer, and he was in Montana when he executed the settlement agreement. The place of reliance favors application of Montana law.
Section 148(2)(b) requires consideration of the place where plaintiff received the defendant’s representations. Hoffman called Butler in Montana and arranged to meet him in Idaho, the only face-to-face meéting the two men had. As explained, Butler alleges that Hoffman made misrepresentations during their meeting, and he testified that some of the misrepresentations were repeated when the two tele-phonically discussed the claim over the course of the next several months. Though Butler participated in those calls from his home in Montana and Hoffman participated in them from Idaho, the district court decided that section 148(2)(b) points toward application of Idaho law because comment g directs that 148(2)(b) should be understood to refer to the place where the representations were first communicated to the plaintiff. There are two problems with this reasoning. First, it fails to account for Hoffman’s November 2007 telephone call to Butler to relay the $50,000 settlement offer and his assurance that it was “a very fair offer.” Like all of the conversations that took place after the single meeting at Hoffman’s Idaho office, Butler was in Montana when he first received the settlement offer and Hoffman’s *528 alleged endorsement of it. Second, the distinct court only called out the first part of comment g, which directs the court to look to the place where representations were first communicated to the plaintiff. The court left off the last portion of comment g, which goes on to caution that “this place [where plaintiff first received the representations] is not so important a contact as is the place ^vhere the plaintiff acted in reliance on the defendant’s representations.” Because Butler definitely acted in reliance on Hoffman's statements at his home in Montana, 148(2)(b) actually weighs in favor of Montana, not Idaho.
A separate reason it was error to decide that section 148(2)(b) weighs in favor of Idaho law is that a significant representation—Hoffman’s endorsement of the settlement offer as fair—was only conveyed to Butler when he was in Montana.
Section 148(2)(c) requires consideration of the place where the defendant made the representations, Hoffman made the alleged misrepresentations in Idaho. Other courts have recognized that the physical location of the actor is of diminished importance when some of the representations are made telephonically, as was the case here, see Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC, 947 F.Supp.2d 841, 855 (S.D. Ohio 2013); Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 728 (5th Cir. 2003), but 148(2)(c) still points to Idaho.
Section 148(2)(d) is a mixed bag. It considers the domicil, residence, nationality, place of incorporation, and place of business of the parties, Butler moved back to Montana six years before he lost his eye and lived there nearly nine years by the time he filed suit. He was traveling to Idaho once or twice per month as of the time he was injured, but he was living and working in Montana, received his mail in Montana, and had a Montana driver’s license. On the other hand, Intermountain is an Idaho corporation. Its principle place of business is in Idaho but it also has offices in Montana. North American is a New Hampshire corporation owned by a publicly traded Swiss entity. Section 148(2)(d) does not weigh in favor of either state.
Section 148(2)(e) looks to the place where the tangible thing that is the subject of the misrepresentation claim is located and section 148(2)(f) considers the place where plaintiff was to render performance under a contract that he alleges he was induced to enter by defendant’s false representations. To the extent there is a “tangible thing” that is the subject of this misrepresentation claim, it is the parties’ written settlement agreement, which was sent to Butler in Montana and executed by him there. The required performance was Butler’s release of all claims arising from the injury, which was accomplished when he signed the settlement agreement in Montana.
Restatement Section 145
When the district court considered the general factors for tort claims in section 145, it concluded that section 145(2)(d) favored application of Idaho law because “the relationship between the parties was centered in Idaho.” But section 145’s general considerations do not trump the more specific provisions for misrepresentation claims set out in Restatement section 148, and, even if they did, the court erred in its application of section 145 because it did not consider the relationship between the parties to this suit. Instead, the court’s order switched its focus to the relationship between the parties who would have been named if Butler had filed products liability or personal injury claims—Butler, the net manufacturer, and the entities comprising the net’s wholesale and retail distribution chain. The court’s order makes this plain; it stated: “A significant amount of the rele *529 vant conduct concerning Butler’s underlying injury occurred in Idaho: (1) the cargo net was offered for sale in Idaho; (2) Butler purchased the net in Idaho; (3) Butler was injured in the course of using the net in Idaho.” These facts have nothing to do with Butler’s claims against North American and Intermountain. Properly applied, section 145 does not favor Idaho law or Montana law because Butler’s negotiations with Hoffman were not centered in either state; the two met once in Idaho, they talked about the claim in subsequent telephone calls conducted across Idaho-Montana state lines, and they memorialized their deal in a release signed by Butler in Montana.
Restatement Section 6
The district court also considered the general conflict principles set out in section 6(2) of the Restatement, but in doing so it gave no weight to the parties’ expectations because, it reasoned, “tort cases generally do not involve justified expectations.” The district court cited to Phillips, but that case does not support the court’s conclusion. Phillips was a products liability case arising from a tragic highway collision. Three Montana residents died and another sustained personal injuries while driving through Kansas in a General Motors pickup sold in North Carolina. Id. at 1005. Sorting through the possibilities in its choice-of-law analysis, the Montana court recognized that automobile manufacturers “presumably give advance thought to the legal consequences of their conduct,” but it held that “any expectation General Motors had that a dispute concerning this pickup would be governed by North Carolina’s [law] would not be justified.” Id. at 1013-14. The court ultimately applied Montana law, largely because the accident implicated Montana’s interest in protecting its residents and deterring conduct deemed wrongful in Montana more than the policies of the other relevant states. Id. at 1015.
Some tort claims, like auto accidents, result from split-second errors in judgment and do not implicate concerns regarding the parties’ reasonable expectations. But Phillips recognized that justified expectations are indeed a factor to be considered in cases like Butler’s, where parties would “presumably give advance thought to the legal consequences of their conduct.” Id. at 1013. There can be no question that Butler and Hoffman gave . advance thought to their actions; they discussed the consequences of Butler’s eye injury for months.
Butler’s expectation that Montana law would apply was reasonable. He is a Montana resident who filed claims in Montana state court alleging that professionals experienced in claims handling, licensed to do business in both states, engaged in misconduct during the negotiation and settlement of the claims arising from the loss of his eye. Except for one meeting, all the misconduct Butler complains of was directed at him in Montana. The district court erred by setting aside any consideration of the parties’ reasonable expectations simply because Butler’s claim sounded in tort.
The district court erred when it decided that Idaho has the most significant relationship to Butler’s claims. If prospective parties to a personal injury action that Butler could have filed—but did not—are not conflated with the parties he actually sued, and if the entirety of the Restatement and its commentary are considered, Montana has the most significant relationship to the occurrence at the center of Butler’s complaint.
For these reasons, I respectfully dissent.